PENDERGAST (DAVIS v.). See Cases Nos. 3,646 and 3,647.

PENDERGAST (SMITH v.). See Case No. 13,090a.

———

## Case No. 10,919.

### PENDERGRAST v. LAMPMAN.

[1 Deady, 54.] [1]

District Court, D. Oregon. Dec. 7, 1863.

SEAMEN—RESISTANCE TO AUTHORITY.

When one of the crew of a vessel resists a person in authority over him while in the discharge of his duty, the latter may lawfully use sufficient force to overcome such resistance.

[This was a libel by John Pendergrast against Henry Lampman to recover damages for personal injuries alleged to have been inflicted by the defendant.]

E. W. Hodgkinson and Lansing Stout, for libellant.

Amory Holbrook, for defendant.

DEADY, District Judge. The libellant substantially alleges that on or about October 12, 1863, he shipped at San Francisco on board the steamer Sierra Nevada as a coal-passer, for a voyage to Portland and back; and that about three o'clock in the morning of October 24, while the vessel was lying at the wharf at Portland, the defendant being then and there first assistant engineer on said vessel, did willfully and wrongfully beat and seriously injure the libellant. The answer of the defendant denies the allegations of the libel concerning the alleged assault, and alleges that on the morning in question the defendant went to the forecastle to call the libellant to duty; that the libellant refused to obey, and finally struck defendant in the face with his fist, whereupon defendant resisted the assault of the libellant and used sufficient force to restrain the libellant from further acts of violence, and no more.

A number of witnesses have been examined. Only one of them—Harry Bruce—saw the inception of the affair, and only one

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

other—Thomas Williamson—saw any portion of it. These witnesses both belong to the crew of the vessel, the former being a coal passer and the latter a saloon waiter. Three others of the ship's crew were also examined—Peter Mackie, the first mate, John Roche, a coal passer, and Joseph McLain, a water tender. Besides these, the libellant has examined three witnesses concerning his appearance after the alleged beating, as evidence of the extent of the injuries received, namely: John O'Connor, late mate of the steamboat Wilson G. Hunt; Edward Gallager, the keeper of the whiskey shop where the libellant was drinking the night before, and John Sullivan, who was in the whiskey shop the same night. The libellant testified that he was on shore that night and went on board very drunk; and that he does not remember much about the matter, but thinks the defendant jerked him out of his berth and struck and kicked him.

After careful consideration, I am of the opinion that the account of the matter given by the witness Bruce is substantially the truth. His appearance on the stand, the manner of giving his testimony, and the intrinsic probability of his story, when compared with the known circumstances of the case, lead me to this conclusion. The scattered and disconnected circumstances testified to by other witnesses, after making due allowance for the effect of such partialities and sympathies as are likely to exist among comrades and cronies, do not materially conflict with his statement. Upon this estimate of the value and probability of the evidence, I find the following to be the facts of the case: That on the evening of October 22, the libellant went ashore and became intoxicated at the house of the witness Gallager, and returned to the ship in that condition; that after being in bed some time, libellant was called and roused-up by the defendant to go on duty, but feeling tired and sullen after his debauch, he behaved ugly and refused to go; that then the defendant took hold of libellant by the shirt and shook him to rouse him up, when the latter assaulted the former by striking him, to which the defendant replied by a blow that knocked libellant down. It is difficult to say how much or severely the libellant was injured. It is evident that he got a hard blow on his face, that for some hours afterwards "bunged up" his eye. But, according to his own testimony, he could see out of it the next morning. The blow and its consequences was nothing more than any sailor who assaulted an officer of the ship, when engaged in the discharge of his duties, might expect. It would be justifiable in case of a similar assault by one stranger upon another while on the street. An officer who would allow one of the crew to strike him with impunity while on duty would be held in contempt by the crew, and be of little or no use to his employer.

The alleged injuries on the libellant's back are not proven, and it is highly improbable that they were inflicted at all. The one upon the groin appears to have been a trifling affair, and may have occurred by the libellant's striking against the carpenter's chest or chain cable in the vicinity of the affray. But suppose the defendant had even struck or kicked the libellant on the thigh, what then? The latter after he was brought down continued to scuffle with and resist the defendant, calling him by the most opprobrious epithets and threatening to kill him. The defendant appears to be well known, and coal-passers who have served on this route under him, speak of him as a kind humane person who never "miscalls" or abuses his men. On the contrary, the libellant, so far as known, bears the reputation of being a turbulent and disagreeable man, except for a few days on the Wilson G. Hunt, while this suit was pending. O'Connor, who was mate on the Hunt, says that he was peaceable and well-behaved while with him. When the libellant got drunk and went on board in a condition which unfitted him for duty, he was unfaithful to his obligation, and to that, more than any other cause, he may attribute the trouble and bruises that followed. Not that I intend for a moment to countenance the idea that a seaman may be beaten or abused with impunity, because he is drunk, and particularly when he is insensible on that account. Far be it from this court to so administer the law as to encourage or countenance cruelty towards the humblest of the crews in our boats and ships. They have their rights, and this court will always endeavor to maintain and enforce them. But the law and courts are not for the benefit of this class of people alone. The forecastle is not all the world. The rights and responsibilities of the quarter deck or those in authority must be considered also. When seamen get drunk and act like brutes, they must not expect to be treated like sober, orderly men.

Decree, that the libel be dismissed and that the defendant recover costs.

---

PENDLETON (BENNETT v.). See Case No. 1,322.